IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JAMES MICHEAL KNOPE, | ) Civil No.:2:18-cv-00294-JE |
| | ) |
| Plaintiff, | ) OPINION AND ORDER |
| | ) |
| v. | ) |
| | ) |
| JOE E. CAPPS, et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |

JELDERKS, Magistrate Judge:

Pro se Plaintiff Knope, an inmate at the Snake River Correctional Institute (SRCI), brings this civil rights action against SRCI Hearings Officers Joe Capps and Amy Breen[1]; Oregon Department of Corrections (ODOC) Inspector General, Craig Prins; and ODOC Assistant Inspector General, Melissa Nofziger. Plaintiff alleges that Defendants violated his right to due

---

[1] Defendant Breen was formerly Amy Atchison which is how she is named in the Amended Complaint. However, this Opinion and Order will use Breen in order to conform with her submitted Declaration and Defendants' motion papers.

OPINION AND ORDER - 1

process during two separate prison disciplinary cases.

Defendants filed a motion for summary judgment. Plaintiff filed his Response and untimely filed a cross-motion for summary judgment. He subsequently filed a motion for reconsideration of the Order disallowing the filing of the untimely motion. For the reasons set forth below, Defendants' motion for summary judgment is granted and Plaintiff's motion for reconsideration is denied.

## **Background**

In a misconduct report dated March 18, 2016, Inspector Blackletter stated that the Special Investigation Unit (SIU) had received information that Plaintiff was involved in the selling and distribution of methamphetamines at SRCI in Complex 2 and Complex 3. (Capps Decl. Att. 3, p. 5). The report alleged that Plaintiff received narcotics and passed them on to another inmate who, in turn, distributed the drugs to other inmates. (Id).

Plaintiff was charged with violating ODOC Rule 1.10 (Contraband I), Rule 1.15 (Drug Possession), Rule 4.10 (Distribution I), and Rule 4.35 (Racketeering). (Id.).

Defendant Hearings Officer Capps opened Disciplinary Case Number 1603-SRCI-0085-SRCI-17A on March 24, 2016. (Capps Decl. ¶ 11). A hearing was held on March 25, 2016. Plaintiff attended and testified. (Capps Decl. Att. 3, p. 14-34). The hearing was

recessed in order for Capps to review the evidence. On March 28, 2016, Capps dismissed the charges without prejudice because it appeared the investigation was not complete. (Id. Att. 4, p. 9).

On April 18, 2016, Capps opened Disciplinary Case Number 1601-SRCI-0172-SRCI-17, a rewrite of the Disciplinary Case he dismissed on March 28th. (Id.) Capps heard additional testimony from Plaintiff and reviewed evidence including misconduct reports and statements from confidential informants. (Capps Decl. Att. 4 and Att. 5).[2]

During the course of the two hearings Plaintiff asked to call four witnesses: Inmate Michael Lay, Tami Mason-Liebenthal, Inmate Dillon Reedy and Inmate Michael Gillette. (Capps Decl. Att. 3, Att. 4). Capps denied Plaintiff's requests. Capps declined to call Inmate Lay because he had already received a statement from him. (Id. Att. 4., p. 26) He denied Plaintiff's request to call Ms. Mason-Liebenthal, who had allegedly passed on methamphetamines to Plaintiff during her visits to him. Capps explained that her testimony would be unproductive and irrelevant as she would be unlikely to admit to bringing drugs into prison and her credibility had no bearing on the proceedings. (Capps Decl. Att. 4, p. 27). Capps declined to call Inmates Reedy and Gillette regarding the number and results of

---

[2] Attachment 5 was submitted under seal and includes confidential informant statements which have been reviewed *in camera* by the Court.

OPINION AND ORDER – 3

urinalysis tests administered in Complex 2 because he questioned how they would "know anything about who got hot UAs." (Caps. Decl. Att. 4, p. 28).

In his Findings of Fact, Conclusion and Order, Capps dismissed the Racketeering and Contraband I charges and found Plaintiff in violation of Rule 1.15 (Drug Possession) and Rule 4.10 (Distribution I) for conspiring to possess and distribute drugs. (Capps Decl. Att. 4). Capps explained that

> There is no physical evidence that Inmate Knope received drugs or that any money or property were exchanged involving inmate Knope, however, the confidential information provided indicates Inmate Knope was able to orchestrate the meth getting from complex 2 to complex 3.

(Capps. Decl. Att. 4, p.10).

After Plaintiff sought administrative review, the Inspector General's office reviewed the hearing. In a letter dated July 5, 2016, Defendant Inspector General Prins concluded that Capps had acted in substantial compliance with ODOC's rules and that his findings were based on a preponderance of the evidence. (Capps. Decl. ¶22, Ex. 4, p. 1).

In a Misconduct Report dated September 6, 2016, Lieutenant C. Anderson wrote that he had begun an investigation on August 15, 2016 into allegations that Knope "had utilized his position as the Leader of the Insane Peckerwood Syndicate (IPS)to order another inmate to be assaulted on the Complex 1

OPINION AND ORDER – 4

Yard." (Breen Decl. Att. 3, pg. 17). He reported that information had been obtained that Plaintiff ordered the assault because of his belief that the inmate had provided information to security staff regarding his earlier misconduct report for distribution. (Id.). Plaintiff was charged with violations of Rule 4.45 (Unauthorized Organization I), Rule 2.05 (Inmate Assault I), and Rule 2.10 (Disrespect I). (Id.).

On September 14, 2016, Defendant Hearings Officer Breen opened Disciplilnary Case Number 1608-SRCI-0148-SRCU-34. (Breen Decl. ¶11). Breen recessed the hearing to review evidence and reopened the hearing on September 22, 2016. (Id. at ¶¶ 12-13, Att. 3, p. 12).

Breen heard testimony from Plaintiff, and reviewed Lt. Anderson's report and information provided in confidential informant statements. In her Findings of Fact, Conclusion and Order, Breen asserted that "[e]ach of the CI's made verbatim statements regarding Inmate Knope's actions in ordering Inmate Johnson to assault Inmate Johansen. The CI's were determined to be believable." (Breen Decl. Att. 3 and Att. 4).[3]

During the hearing Breen denied Plaintiff's request to call as a witness Inmate Johnson, who carried out the assault. Breen

---

[3] Attachment 4 was submitted under seal and includes confidential informant statements which have been reviewed *in camera* by this Court.

stated on the record that she was not going to call Johnson as a witness because she wouldn't be able to share his testimony with Plaintiff and it would likely create a threat to the safety, security and orderly operation of the prison. (Id. Att. 3, p. 28).

Breen dismissed the Disrespect I charge due to insufficient evidence but found Plaintiff in violation of Rule 4.45 (Unauthorized Organization I) and Rule 2.05 (Inmate Assault I). (Id. Att. 3. P. 13).

After Plaintiff sought administrative review, the Inspector General's office reviewed the hearing. In a letter dated January 4, 2017, Defendant Assistant Inspector General Nofziger concluded that Breen had acted in substantial compliance with ODOC's rules and that her findings were based on a preponderance of the evidence. (Id. p. 1).

## **Evaluating Motions for Summary Judgment**

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548 (1986). The moving party may discharge this burden by showing that there is an absence of evidence to support the

nonmoving party's case. *Id.* When the moving party shows the absence of an issue of material fact, the nonmoving party must go beyond the pleadings and show that there is a genuine issue for trial. *Id.*

The substantive law governing a claim or defense determines whether a fact is material. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987). Reasonable doubts concerning the existence of a factual issue should be resolved against the moving party. *Id.* at 630–31. The evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505 (1986). No genuine issue for trial exists, however, where the record as a whole could not lead the trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348 (1986).

## Discussion

Plaintiff asserts that Hearings Officers Capps and Breen violated his right to due process by denying his requests to call witnesses for his disciplinary hearings and by finding him guilty of violating ODOC's rules. Plaintiff asserts that Inspector General Prins and Assistant Inspector General Nofziger violated his right to due process when they concluded, upon

review of the disciplinary cases, that Capps and Breen had complied with the applicable rules and that their findings were based on a preponderance of the evidence. Plaintiff argues that Prins and Nofziger "had the power to overturn these convictions or reopen them to consider new evidence." (Pl. Resp. p. 5).

**I. Defendants Prins and Nofziger**

Defendants assert that Plaintiff's claims against Defendants Prins and Nofziger fail as a matter of law as impermissible vicarious liability claims. I agree.

A plaintiff may state a claim under Section 1983 against a supervisor for constitutional violations "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)(internal quotation marks and citation omitted). There is no *respondeat superior* liability under § 1983. *Monell v. New York City Dep't. of Social Services,* 436 U.S. 658, 691 (1978).

Here, the wrongful conduct Plaintiff alleges was Prins' and Nofzigers' denial of his appeals from Capps' and Breen's rulings. That they "had the power" to overturn or reopen the proceedings below does not rise to the level of personal involvement necessary to support a claim for supervisory liability under § 1983.

Furthermore, the Oregon Administrative Rules (OAR) do not provide a right to an appeal of disciplinary proceedings. *See* OAR 291-105005 through 291-105-0100. Under the OARs, the inspector general may vacate any part of a disciplinary order or reopen the disciplinary hearing in the interest of justice. OAR 291-1050100. This, however, is not a right to which a prisoner is entitled. *See id.* ("The Inspector General ... *may,* in the interest of justice, vacate all or part of a final disciplinary order or withdraw the order and direct that a disciplinary hearing be reopened for consideration of new evidence.") (emphasis added). Therefore, Prins and Nofziger did not violate Plaintiff's rights by deciding not to reverse or reopen the disciplinary cases at issue here. Accordingly, Plaintiff's claims against Prins and Nofziger fail as a matter of law.

**II. Defendants Capps and Breen**

Defendants argue that Hearings Officers Capps and Breen provided Plaintiff with all the process that he was due and that, in any event, both Defendants are entitled to qualified immunity.

The doctrine of qualified immunity shields government officials from civil liability when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The Court follows a two-step inquiry to determine whether a state actor is entitled to qualified immunity: (1) whether the facts taken in the light most favorable to the party asserting the injury show conduct that violated a constitutional right; and (2) whether the right was clearly established at the time the alleged violation occurred. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). The Supreme Court has made clear that the sequence in which a court must consider the *Saucier* prongs is not mandatory and judges "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first. . . ." *Pearson,* 555 U.S. at 236.

**A. Witness Requests**

The Fourteenth Amendment's Due Process Clause states: "... nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 2. Due process in a prison disciplinary proceeding includes providing the inmate: (1) written notice of the charges; (2) some time following the notice to prepare a defense; (3) a written decision by the fact-finder; (4) the opportunity to call witnesses and present documentary evidence in his defense when consistent with institutional safety and correctional goals; and (5) assistance from staff or other inmates if the inmate is illiterate or if the case is extremely complex. *See Wolff v.*

*McDonnell*, 418 U.S. 539, 563-72 (1974); *Baker v. Daniels*, No. Civ. 04-969-TC, 2005 WL 387128, at *2 (D. Or. Feb. 15, 2005) (summarizing *Wolff*'s requirements).

The right to call witnesses, however, is not unrestricted. *Wolff,* 418 U.S. at 566. The inmate's interest in presenting witnesses must be weighed against "the needs of the prison, and some amount of flexibility and accommodation is required." *Id.* "[T]here is no right to call witnesses whose testimony would be irrelevant, repetitive, or unnecessary." *Piggie v. Cotton*, 344 F.3d 674, 677 (9th Cir. 2003). Furthermore, an inmate should be allowed to call witnesses only "when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566. Thus, irrelevance, lack of necessity, or the hazards presented are permissible justifications prison hearings officers may provide when refusing to allow a prisoner to call witnesses. *See Wolff,* 418 U.S. at 566. Nonetheless, in order to satisfy due process, prison officials must "explain, in a limited manner, the reason why witnesses were not allowed to testify." *Ponte v. Real*, 471 U.S. 491, 497 (1985).

Here, Capps denied Plaintiff's requests for witnesses on the record during the hearing because statements had already been received (Inmate Lay), testimony would be unproductive and the witness' credibility was not relevant (Mason-Liebenthal),

and the witnesses would have no personal knowledge of the information Plaintiff sought (Inmates Reedy and Gillette). In his written Findings of Fact, Conclusion and Order, Capps wrote that Plaintiff's requests for witnesses were denied because they "wouldn't constitute a defense." (Capps. Decl. Att. 4, p. 9).

During the September 2016 hearings, Breen denied Plaintiff's request to call Inmate Johnson, who had allegedly been the one to assault Inmate Johansen on Plaintiff's orders, due to safety and security concerns. Her written Findings of Fact, Conclusions and Order noted that the request had been denied because the information from Inmate Johnson "would not have created a defense to the allegations." (Breen Decl. Att. 3, p. 12).

These were valid reasons for Capps and Breen to deny Plaintiff's requests to call witnesses, decisions which were within their discretion to make. *See Wolff,* 418 U.S. at 566.

**B. Sufficiency of Evidence**

Plaintiff's allegation that there was insufficient evidence to support the disciplinary decisions issued by Capps and Breen implicates Plaintiff's right to substantive due process. Substantive due process requires only "some evidence" to support a prison disciplinary decision. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985). Where a hearings officer's determination in a disciplinary hearing is

based on statements of unidentified informants, due process requirements are satisfied if

> (1) the record contains some factual information from which the [hearings officer] can reasonably conclude that the information was reliable, and (2) the record contains a prison official's affirmative statement that safety considerations prevent the disclosure of the informant's name. Review of both the reliability determination and the safety determination should be deferential.

*Zimmerlee v. Keeney*, 831 F.2d 183, 186 (9th Cir. 1987).

Here, Defendants submitted under seal for this Court's *in camera* review CI statements and other documents on which Capps and Breen relied in making their determinations. The record also contains the investigation reports, hearings transcripts and additional statements not filed under seal. The Court finds that, in both the disciplinary case overseen by Capps and that overseen by Breen, a reasonable hearings officer could conclude that the CI statements were credible. Furthermore, both hearings officers indicated that safety considerations prevented disclosure of the informants' names. Accordingly, on this record, the Court concludes that neither Capps nor Breen violated Plaintiff's substantive due process rights as their decisions were based upon "some evidence."

**C. Clearly Established Right**

Even if I were to conclude that there existed genuine issues of material fact as to whether Defendants violated

Plaintiff's constitutional rights, I would nonetheless find both Breen and Capps entitled to qualified immunity based on the second *Saucier* prong that requires the right to be "clearly established."

Although the law "'do[es] not require a case directly on point'" for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)(quoting *Ashcroft v. al-Kidd,* 563 U.S. 731, 741, 131 S.Ct. 2074 (2011)). In other words, "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id*.(quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092 (1986)). The Supreme Court has repeatedly admonished that the established right must be "defined with specificity" and not at a "high level of generality." *al–Kidd,* 56 U.S. at 742, 131 S.Ct. 2074.

On this record and based on the rules, statutes and caselaw discussed above, the Court concludes that a reasonable hearings officer would have believed that the procedures used and the decisions to deny the requests for witnesses in plaintiff's disciplinary hearings were lawful.

**D. Official Capacity Claims**

It is not entirely clear from Plaintiff's Amended Complaint whether Defendants are being sued in their personal or official

capacities, or both. However, Plaintiff does seek injunctive relief in the form of expungement of his disciplinary record. (Am. Compl. pp. 8-9). Although this issue is not raised by the parties in the pending motion, in an abundance of caution and for purposes of any future review, I will briefly address it here

A suit for monetary damages against a state actor in his or her official capacity is in effect a suit against the state and barred by the Eleventh Amendment. *Native Village of Noatak v. Blatchford,* 38 F.3d 1505, 1512 (9th Cir. 1994)(citations omitted). Thus, to the degree Plaintiff seeks monetary relief against Defendants in their official capacities, those claims are barred.

A state official in his or her official capacity, when sued for injunctive relief, is a person under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State." *Kentucky v. Graham,* 473 U.S., 159, 167, n. 14, 105 S.Ct. 3099, 3106, n. 14; *Ex parte Young,* 209 U.S. 123, 159-160, 28 S.Ct. 441, 453-454, (1908). Although Capps and Breen are entitled to qualified immunity for the personal-capacity damages claims against them, "[c]laims for injunctive and declaratory relief are unaffected by qualified immunity." *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012).

In an official-capacity suit against a state official, the plaintiff must demonstrate that a policy or custom of the governmental entity of which the official is an agent was the "moving force" behind the violation. *Polk County v. Dodson*, 454 U.S. 312, 326, 102 S.Ct. 445, 454, (1981); *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037.

Here, Plaintiff has neither alleged nor submitted any proof that the decisions to deny Plaintiff's requests for witnesses or Defendants' determination that Plaintiff had violated ODOC rules were the result of an ODOC policy or custom. Accordingly, Plaintiff has not presented a genuine dispute regarding any claims against Capps and Breen in their official capacity and any such claims are dismissed.

**III. Plaintiff's Motion for Summary Judgment**

As noted above, Plaintiff untimely filed a cross-motion for summary judgment and subsequently filed a motion for reconsideration of the Order disallowing the filing of the untimely motion. I deny Plaintiff's motion for reconsideration. However, in reaching that decision I reviewed his cross-motion for summary judgment and note that I would have, in any event, denied the cross-motion for summary judgment for the same reasons that I grant Defendants' motion for summary judgment.

## Conclusion

For the reasons set forth above, Defendants' Motion for Summary Judgment (Dkt. # 30) is GRANTED and Plaintiff's Motion for Reconsideration (Dkt # 43) is DENIED.

DATED this 7th day of March, 2019.

/s/ John Jelderks
John Jelderks
U.S. Magistrate Judge